432 P.2d 60

Don FOSTER, Plaintiff and Respondent,

v.

Elmo J. STEED, an individual, Gordon G. Wheeler, an individual, Elmo J. Steed and Gordon G. Wheeler, dba S & W Texaco Service, a partnership, Defendants,

Texaco, Inc., a corporation, Defendant and Appellant.

No. 10685.

Supreme Court of Utah.

Sept. 26, 1967.

[1]. 10 Utah 322, 37 P. 572 (1894).

**436**

Ray, Quinney & Nebeker, Stephen B. Nebeker, Salt Lake City, for appellant.

Clyde, Mecham & Pratt, Roland R. Wright, Salt Lake City, for respondent.

CALLISTER, Justice:

This is an interlocutory appeal by Texaco, Inc., one of the named defendants, from a denial by the trial court of its motion for summary judgment.

Plaintiff, Don Foster, went to the S & W Texaco Service Station, located in Bountiful, Utah, to purchase gasoline for his truck. Gordon G. Wheeler, a partner in

the service station, and Bob Madall, an employee, requested Foster's aid in pushing a car into one of the bays of the station. Foster was further asked to pour gasoline into the carburetor, while Wheeler was blowing air into the gas tank and Madall was starting the car. While the gas was being poured, the motor backfired and ignited the fuel. The flaming fuel set Foster on fire; as he jumped back he tripped on a pan filled with gasoline used to clean parts; this also ignited and burned Foster.

Foster filed an action for damages against Steed and Wheeler, individually and as partners and against Texaco. Subsequently, depositions were taken by all the parties. Texaco filed a motion for summary judgment on the basis that Steed and Wheeler operated the S & W Texaco Service Station as independent contractors and not as agents of Texaco and, therefore, it was not liable for the tortious conduct alleged to have caused Foster's injuries. The trial court denied the motion on the grounds that it cannot be said that there was no genuine issue as to any material fact or facts concerning the relationship between Texaco and the other defendants in the operation of the service station, and that in the opinion of the court, additional factors helpful in determining the issue can be more fully developed by evidence and testimony upon trial.

In the instant case, all of Texaco's witnesses testified that it did not set the hours of operation, or control the hiring or firing of personnel, require reports, or prevent puchasing products from other sources.

On the other hand, Foster contends that the following evidence discloses sufficient factual issues to warrant a trial. Texaco had responsibility for making certain the building was properly maintained, and its representatives conducted inspections of the premises. It further effected the needed repairs after the fire. Wheeler and others were encouraged to wear the Texaco uniform and to identify with its products. The only pumps in the station bore the Texaco trademark, and the sale of any other product under the Texaco trademark was forbidden. The manner and nature of delivery of products was under the control of Texaco, and it was customary for the operators to buy all items for sale from Texaco. The company had established criteria for obtaining operators for their stations, and the operators attended a school where they received instructions on marketing, operations, and safety. All documents evidencing the relationship of the parties were prepared by Texaco on standard forms.

Further, there was a large Texaco sign on the premises, and another sign read "S & W Texaco Service." The format and design of the station were in accord with Texaco standards. The lease between

Steed and Wheeler, lessees, and Texaco, lessor, required the former to keep the premises in a clean, safe, and healthful condition, and further provided that the lessor can terminate if the lessees breach its covenants or upon certain specified conditions.

Foster contends that the foregoing facts, taken together, create a jury question, and that a jury would be acting reasonably in finding Texaco liable based upon the full extent of the relationship and involvement of the company.

In Leininger v. Stearns-Roger Manufacturing Co.,[1] this court stated:

> * * * Summary judgment is not a substitute for trial but is rather a judicial search for determining whether genuine issues exist as to material facts. Rule 56, Utah Rules of Civil Procedure, dictates the granting of summary judgment where there is no genuine issue of a material fact. The plaintiff in the instant case has attempted to create factual issues, but the whole purpose of summary judgment would be defeated if a case could be forced to trial by a mere assertion that an issue exists. * * *

Considering Foster's contention in a light most to his advantage and with all the doubts resolved in favor of permitting him to go to trial, has he, nevertheless, failed to establish a right to recover?[2] This question must be answered in the affirmative. The determination of the status of a service station operator as an agent or employee of the manufacturing or producing company, for whose acts the latter is liable under the doctrine of respondeat superior, or as merely an independent contractor, as to whom no liability exists, has been treated by the courts as governed by the same general principles applicable in determining the existence of such relationship in other situations.

In general, the determinative question has usually been posed as one of "control", the view being that if the defendant controls, or has the right of control, the manner in which the operations are to be carried out, the defendant is liable as a master, while, if the control extends only to the result to be achieved, the actor is regarded as an independent contractor, and the defendant is liable under neither respondeat superior nor the workmen's compensation statutes.[3]

A representative case in this area of the law which bears a striking factual similarity, particularly with reference to the relationship between the oil company and the

---

1. 17 Utah 2d 37, 43–44, 404 P.2d 33 (1965).
2. Controlled Receivables, Inc. v. Harman, 17 Utah 2d 420, 413 P.2d 807 (1966).
3. 83 A.L.R.2d 1284, Anno: Gasoline Dealer—Status.

service station operator, to the instant case is Hoover v. Sun Oil Company [4] wherein the plaintiffs received injuries as the result of a fire at a service station operated by one Barone. The fire occurred while plaintiffs' car was being filled with gasoline and was allegedly caused by the negligence of one Smilyk, an employee of Barone. Plaintiffs' action was against Smilyk, Barone, and Sun Oil Company, which owned the service station. Sun moved for summary judgment on the basis that Barone was an independent contractor; while plaintiffs contended that Barone was acting as Sun's agent.

The Delaware Court granted Sun's motion and, in so doing, stated:

Plaintiffs contend in effect that the aforegoing facts indicate that Sun controlled the day-to-day operation of the station and consequently Sun is responsible for the negligent acts of Barone's employee. Specifically, plaintiffs contend that there is an issue of fact for the jury to determine as to whether or not there was an agency relationship.

The legal relationships arising from the distribution systems of major oil-producing companies are in certain respects unique. * * * In some situations traditional definitions of principal and agent and of employer and independent contractor may be difficult to apply to service station operations, but the undisputed facts of the case at bar make it clear that Barone was an independent contractor.

Barone's service station, unlike retail outlets for many products, is basically a one-company outlet and represents to the public, through Sunoco's national and local advertising, that it sells not only Sun's quality products but Sun's quality service. Many people undoubtedly come to the service station because of that latter representation.

However, the lease contract and dealer's agreement fail to establish any relationship other than landlord-tenant, and independent contractor. Nor is there anything in the conduct of the individuals which is inconsistent with that relationship so as to indicate that the contracts were mere subterfuge or sham. The areas of close contact between Sun and Barone stem from the fact that both have a mutual interest in the sale of Sun products and in the success of Barone's business.

The cases cited by both plaintiffs and defendant indicate that the result varies according to the contracts involved and the conduct and evidence of control under those contracts. Both lines of cases indicate that the test to be applied is that of whether the oil company has retained the right to control the details of the day-to-day operation of the service station;

4. Delaware, 212 A.2d 214 (1965).

control or influence over results alone being insufficient. * * *

The facts of this case differ markedly from those in which the oil company was held liable for the tortious conduct of its service station operator or his employees. Sun had no control over the details of Barone's day-to-day operation. Therefore, no liability can be imputed to Sun from the allegedly negligent acts of Smilyk. * * * 5

In the instant case, the relationship between Texaco and the operators of the station was controlled by a lease and an agreement of sale; each of which had a term of year to year unless cancelled for a breach. The lease provided for $70 per month rent plus a percentage of the gasoline delivered for resale. The agreement of sale provided for the maximum amount of gasoline and other products which Texaco was obligated to deliver. The expenses of operation were to be paid by the lessee. The operators were obligated to pay for their gas and accessories on a cash basis and could sell them at a price of their own determination. They could buy products from sources other than Texaco, and stood to retain all of the profits and suffer all of the losses incurred in the operation of the

station. They could sell their products on a credit basis if they so desired. As previously mentioned, the operators could hire and fire their employees, set their hours of operation, and were not required to make reports to Texaco.

The obligation of the lessees to keep the premises, buildings and equipment in good repair and in a clean, safe and healthful condition is not inconsistent with a landlord-tenant relationship and is not indicative of an agency relationship. Plaintiff has not pointed to any conduct that would tend to show the contracts were a sham or subterfuge to conceal the true relationship between the parties. The areas of mutual contact demonstrate a mutual interest in the sale of Texaco products and the success of the business. None of the evidence cited by plaintiff indicates that Texaco retained control of the day-to-day operation but, rather, merely influenced the result to be achieved, revealing an independent contractor status.

The trial court erred in its order denying Texaco's motion for summary judgment. Reversed and remanded. No costs awarded.

CROCKETT, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ., concur.

5. For recent cases in accord with this opinion, see: Smith v. Cities Service Oil Co., 346 F.2d 349 (C.A.7th 1965); Drum v. Pure Oil Co., Fla.App., 184 So. 2d 196 (1966); Coe v. Esau, Okl., 377 P.2d 815 (1963); Shaver v. Bell, 74 N.M. 700, 397 P.2d 723 (1964).