**TRUCK INSURANCE EXCHANGE,**
**Plaintiff and Respondent,**

v.

**Kenneth YARDLEY, dba Yardley Dairy,**
**Defendant and Appellant.**

No. 14541.

Supreme Court of Utah.

Nov. 5, 1976.

Joseph E. Jackson of Cline, Jackson, Mayer & Benson, Cedar City, for defendant and appellant.

Don J. Hanson, A. Alma Nelson of Hanson & Garrett, Salt Lake City, for plaintiff and respondent.

HENRIOD, Chief Justice:

Appeal from a declaratory judgment that defendant Yardley was the employer of one Cole, an injured claimant under an insurance policy, who hauled grain for Yardley, who in turn had the insurance contract with plaintiff that excluded coverage in an employer-employee relationship. Affirmed with no costs awarded.

Upon examining the facts adduced the trial judge held as a matter of law that such relationship existed, and consequently the insurance company was not on the risk. The judge took the case from the jury in a decision something akin or tantamount to a judgment non obstante veredicto, where a judgment might be granted where a verdict clearly may be contrary to the evidence.

The trial court's judgment, and our affirmance, we believe and hold, correctly are bottomed on facts that are uncontroverted, save the gratuity volunteered by Cole to the effect that he was "an independent contractor," but—obviously only an opinion.

This case was instituted to obtain a declaratory judgment to interpret the provision therein with respect to bodily injury as applied to the facts here which specifically excepts:

> bodily injury . . . of any employee . . . arising out of or in the course of his employment . . .

The only issue in this case is whether there was an employer-employee relation, and whether the trial court under any circumstances can determine that fact as a matter of law and thus take it from the jury.

The insurance company called as witnesses, only Cole and Yardley. Yardley called none. Cole said he was a retired

truck driver, having driven vans for two companies. After retiring, he drove a truck and did various odd jobs for various employers, to supplement his pension and Social Security. They included truck driving, carpenter work, rounding up cattle, feeding cattle, mowing lawns, fixing leaky faucets,—(a sort of handy, man). He never advertised that he was an experienced trucker nor did he have an office.

Cole started working for Yardley in 1972, hauling silage in *Yardley's* trucks, Yardley buying the silage and directing the route of hauling, paying $2.50 an hour. Cole also and later built cupboards for Mrs. Yardley at her direction. Mr. Yardley furnished the materials and tools, and instructed Cole how he wanted. the work done, and at the same hourly rate. Some time after the silage hauls, Yardley sought Cole to haul grain necessary in operating his dairy. He told Cole to drive Yardley's trucks occasionally to go after and bring back the grain,—a five-hour trip, more or less, for $15,—a pretty close average to the basic $2.50 he had been paying him for the dissimilar work mentioned supra. Cole received his instructions from Yardley the day before any trip was scheduled, whence Cole would go to Yardley's place of business, pick up the truck, having no authority to hire or permit anyone else to drive. Yardley maintained, gassed and oiled the vehicle. On one occasion, with Yardley's permission, Cole took his wife along, dropped her at an intermediate point, and picked her up on the return trip. Occasionally he would stop en route to buy some eggs for himself and his neighbors, with no evidence of doing so for profit, or because he was in any way in the egg business. He would not depart from the assigned route without Yardley's permission. On one occasion the day before Cole's injury, Yardley had told him to unload the truck, which Cole would not have done but for Yardley's request and instruction, for which job Yardley paid Cole $10.

On the day of the injury, one Cartwright, and another, working for Yardley, along with Cole, and at Yardley's instance, were preparing to unload and ready the truck for loading again, when Cole was injured as the machinery started operating.

Yardley owned a cow milking operation, with barns, equipment, etc., including two trucks, driven occasionally by Cole as above mentioned. Most of the business was maintained by Yardley, his father, wife and son together with occasional hired help. Cole apparently was one such, and had no authority, except as outlined above.

There is nothing in the Statement of Facts in Yardley's brief that is inconsistent with what appears to be uncontradicted facts in the plaintiff's brief, except that the former's said the grain hauling trips required "*at least* 3½ hours" while the latter's suggested they were "about 5 hours . . . ½ hour to 1 hour longer and sometimes ½ hour less."

Counsel for Yardley relies almost entirely on *Parkinson v. Industrial Commission*,[1] to establish his thesis that factually, Cole was an "independent contractor"; but irrespective of such gratuity, he urges that the question of that status and the one incident to the employer-employee relationship, generally are resolvable only by an arbiter of the facts,—in this event,—the jury. He continues by asserting that "An employment status becomes a question of. law only if from all of the facts only a single inference and conclusion may be drawn, whether one be an employee or independent contractor." With this we agree, except, perhaps in the use of the word "inference," which of necessity and logic seems to be swallowed up by the word "conclusion."

We think such conclusion is more than amply supported in the record. We think Parkinson has its own and different facts and is in no way dispositive here. In truth, although the facts are different,

---

1. 110 Utah 309, 172 P.2d 136 (1946).

much of the substance of that case would seem to be supportive of our affirmance here.

No good purpose would be served here in a factual analysis and comparison between Parkinson, and none would seem necessary with respect to the authorities referred to both in the plaintiff's and the defendant's briefs,—both well documented and annotated,—to which we refer the reader for a more comprehensive treatment of one of the most frequent and troublesome aspects of both case law and statutory interdiction.[2]

ELLETT, MAUGHAN, CROCKETT and WILKINS, JJ., concur.

---

2. *Beutler v. MacGregor*, 85 Idaho 415, 380 P.2d 1 (1963) ; *Yucaipa v. Indust. Acc. Comm.*, 55 Cal.App.2d 234, 130 P.2d 146 (1942) ; Restatement, Agency 2d, Sec. 220 (2) ; *Christean v. Ind. Comm.*, 113 Utah 451, 196 P.2d 502, 1948; *Sutton v. Ind. Comm.*, 9 Utah 2d 339, 344 P.2d 538 (1959) ; *Foster v. Steed*, 19 Utah 2d 435, 432 P.2d 60 (1967) ; *Thiokol v. Peterson*, 15 Utah 2d 355, 393 P.2d 391 (1964) ; *Young v. Ashton*, 538 P.2d 316 (Utah 1975).