Wesley G. HARLINE, Plaintiff and Respondent,

v.

Lewis E. CAMPBELL and Patricia Campbell, Defendants and Appellants.

No. 19576.

Supreme Court of Utah.

Oct. 28, 1986.

Thomas A. Quinn, Douglas Matsumori, Penny A. Rodeen, Salt Lake City, for defendants and appellants.

Richard W. Campbell, John Sampson, Ogden, for plaintiff and respondent.

HALL, Chief Justice:

Defendants appeal the judgment of the district court which determined that plaintiff and defendant Lewis E. Campbell ("Campbell") were engaged in a joint venture to develop and sell real property and that plaintiff had a protectible interest in the subject property. The central issue on appeal is that of the sufficiency of the

evidence to support the judgment of the trial court.

The facts are not in material dispute. In 1978, Gary L. Carson Investment Co. ("Carson") executed three promissory notes and trust deeds in favor of Bank of America Mortgage ("BA Mortgage") to finance a residential development in Davis County. At the same time, Carson arranged through attorney Richard Richards ("Richards") a $125,000 letter of credit from plaintiff ("Harline") to BA Mortgage to insure completion of the project. Under this agreement, Harline was to be granted an undivided interest in the project or in the proceeds of the project if BA Mortgage drew upon the letter of credit, or a fee in the event BA Mortgage did not do so. Carson defaulted on the BA Mortgage debt. In November of 1978, BA Mortgage picked up the $125,000 letter of credit given by Harline and applied it to the Carson indebtedness. No interest in the property was ever conveyed to Harline or recorded.

BA Mortgage then filed a notice of default on all three trust deeds. On August 31, 1979, Campbell and Richards agreed with Carson that they would purchase the Carson obligation to BA Mortgage from BA Mortgage and, in exchange for a fee, give Carson a thirty-day grace period to repurchase the trust deeds. Campbell borrowed money and paid BA Mortgage $257,-000.[1] Campbell was then assigned the three promissory notes and trust deeds. Carson failed to make the required payments to Campbell. Campbell extended the due date for the payments, but Carson did not pay the fee or the money due under the three promissory notes. Campbell then directed Richards, as the trustee under the BA Mortgage trust deeds, to commence foreclosure proceedings. On March 11, 1980, Richards filed a notice of default on the BA Mortgage trust deeds. On April 11, 1980, Richards noticed a trustee's sale of the subject property for May 20, 1980.

However, subsequent to Carson's execution of the BA Mortgage promissory notes and trust deeds, Carson executed a promissory note to Daniel I. Dipo for $54,000, secured by a trust deed covering the subject property. This trust deed was recorded. Carson also defaulted on this note. Following this default, the trustee for the Dipo trust deed noticed a trustee's sale of the subject property. To prevent the sale, Campbell and Harline paid $42,300, on or before May 20, 1980, to secure assignment to Harline of the Dipo trust deed.

On May 20, Richards sold the property at public auction. Campbell attended and was the successful bidder. On the same day, Harline and Campbell executed an agreement. The agreement ("the May 20th agreement") defined the respective interests of Harline and Campbell ("the parties"). The trustee's sale on May 20 was subsequently held null and void by the court because it was conducted without allowing sufficient time to pass following the recording of the notice of default.

Efforts to refinance or sell the property were unsuccessful. On April 14, 1981, Campbell hand-drafted an amendment to the May 20th agreement which further outlined the respective and mutual interests of the parties and set forth their agreement to work together to protect their interests.

On November 5, 1981, Campbell gave notice by letter to Harline that he was disclaiming any further obligations to Harline and that he was going to foreclose on Harline's interest. The foreclosure sale was scheduled to be held March 29, 1982. On March 26, Harline brought this action to enjoin the scheduled foreclosure sale and for other equitable relief. Harline also secured a temporary restraining order which prevented the scheduled foreclosure sale of the subject property. Following a bench trial, the judge entered judgment in Harline's favor, determining that the parties were engaged in a joint venture and that Harline had a protected interest in the

1. Richards subsequently withdrew from his obligation to pay to Campbell a portion of the sum paid by Campbell to BA Mortgage.

property. The judge also predetermined the amount and order of the disposition of proceeds to the parties in the event a sale to third parties should take place.

■ Under familiar rules of appellate review, the Court views the evidence in the light most favorable to the judgment of the trial court,[2] and the findings of the trial court will not be disturbed unless there is no substantial record evidence to support them.[3] It is incumbent upon the appellant to marshal all of the evidence in support of the trial court's findings and to then demonstrate that even when viewed in the light most favorable to the factual determinations made by the trial court, that the evidence is insufficient to support its findings.[4] Application of those standards of review in the instant case prompts the conclusion that the trial court's findings have adequate evidentiary support and therefore should not be disturbed.

The May 20th agreement specifically acknowledged and defined the respective interests of the parties in the property and recited that "each party is desirous of protecting his own interest and displays a willingness to assist the other in protecting his interest." The agreement further recited that the "bidding in said property will be conducted by each of them ... in such manner as to protect the investment and potential profit of each of the parties," and that "each will cooperate fully with the other to insure that the initial investment together with all interest expense incurred by each of them and each of their anticipated profits will be paid."

The April 14th amendment drafted by Campbell again recited that "Campbell and Harline agree that Harline has an interest in the property and will work to preserve both Campbell and Harline's interest in the future." The amendment further recited the agreement of the parties to seek refinancing using the land as collateral and the formula to be followed in dividing the proceeds and any profits realized from the sale of the property.

■ It was thus without question that Harline had an agreed position and interest in the property. The substance of the written agreement, as amended, coupled with the actions taken by the parties in respect thereto, clearly supports the conclusion reached by the trial court that the parties were engaged in a joint venture. As the Court observed in *Bassett v. Baker*:[5]

A joint venture is an agreement between two or more persons ordinarily but not necessarily limited to a single transaction for the purpose of making a profit. The requirements for the relationship are not exactly defined, but certain elements are essential: The parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

While the agreement to share losses need not necessarily be stated in specific terms, the agreement must be such as to permit the court to infer that the parties intend to share losses as well as profits.[6]

In the instant case, it appears that the essential elements of a joint venture are present. The parties combined their money and property by jointly purchasing the Dipo trust deed to protect their interests and by Harline having paid interest to Campbell in an effort to keep the project afloat; the parties jointly sought further financing and made attempts to sell the property; the parties jointly purchased the

2. *City Elec. v. Industrial Indem. Co.,* 683 P.2d 1053, 1059–60 (Utah 1984).

3. *Bennion v. Hansen,* 699 P.2d 757, 759 (Utah 1985).

4. *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

5. 530 P.2d 1 (Utah 1974).

6. *Id.* at 2 (footnotes omitted).

property at the May 20th sale; and the parties' written agreement specifically provided for the sharing of losses as well as profits. At the very least, the agreement of the parties was one capable of enforcement.

■ Defendants contend that Harline's failure to obtain financing to pay Campbell off thereby entitles Campbell to a forfeiture of Harline's interest. This contention is not borne out by the terms of their agreement. On the contrary, paragraph 11 of the May 20th agreement imposed upon the parties the joint obligation to make application for a loan to refinance the property:

> In the event the property is not purchased by a third party on May 20, 1980, and an Earnest Money Offer is not accepted by the parties hereto from a third party within 10 days from date of sale, CAMPBELL and HARLINE will immediately make application for a loan to refinance the property with HARLINE to be the sole obligor under the loan.

Paragraph 12 following provided:

> The purpose of the preceding provisions shall be to insure to CAMPBELL that he will not have to wait beyond September 1, 1980, to be paid, and in the event he is not paid by said date, he shall have no further obligation to preserve the interest of HARLINE and may look solely after his interest in this matter.

The parties both testified that refinancing simply was not available. It was Campbell's testimony that Harline approached him for an extension of the September 1, 1980 date and that an extension was agreed upon, provided Harline paid him interest. On the other hand, Harline testified that it was Campbell who made the request that he be paid interest because he was strapped for cash. Harline further testified that he paid interest for a year to keep the project afloat but that he ceased making payments after April 1981, because of the financial drain upon him caused by making his own interest pay-

ments as well as Campbell's. The trial court accepted Harline's testimony, which was within its prerogative to do.

Although paragraph 12 of the May 20th agreement provided for the eventuality that Campbell have no further obligation to preserve the interest of Harline, nothing contained therein affords him the right to forfeit that interest. In any event, the April 14th agreement specifically amended said paragraph 12 to provide that "Campbell and Harline agree that Harline has an interest in the property and will look to preserve both Campbell and Harline's interest in the future." Furthermore, the subsequent activities of the parties are consistent with their commitment to protect the interests of the other and support the conclusion reached by the trial court that forfeiture was wholly inconsistent with their agreement.

■ Defendants also contend that the May 20th agreement and April 14th amendment thereto should be set aside because the purpose of the agreement was frustrated; because the agreement was unenforceable by reason of a mutual mistake of fact which arose out of the infirmity of the May 20th sale; and because the agreement lacked a material and essential term necessary for enforceability inasmuch as it failed to specify who was to pay the additional money for the property if Campbell outbid a third party at the May 20th sale. However, the fact that the May 20th sale was found to be invalid by reason of lack of proper notice only delayed the sale and did not frustrate the agreement of the parties. Also, the infirmity in the May 20th sale did not constitute a mistake of fact. More accurately, the mistake was one of the legal effect of the sale, not the fact of sale. Thus, the mistake was one of law and not one of fact.[7] In any event, the mistake does not rise to such a level as would warrant the granting of equitable relief. The mistake delayed but did not prevent

---

**7.** *See generally* 27 Am.Jur.2d *Equity* § 36 (1966).

acquisition of title to the property or otherwise abort the agreement of the parties.[8]

The absence of a specific provision for payment of the amount necessary to outbid third parties at the foreclosure sale also does not render the agreement of the parties unenforceable. The content of the written agreement of the parties, together with the evidence adduced at trial and the reasonable inferences to be drawn therefrom, adequately supports the court's findings with respect to the mutual interests of the parties and their agreement to work together to protect those interests. The injunction having been lifted, the sale has now been completed by the trustee, and the parties are entitled to participate in the distribution of the sale proceeds in accordance with the formula established by the trial court.

▮ Defendants' remaining contention is that Harline had an adequate remedy at law and therefore was not entitled to injunctive relief. The granting or refusal of an injunction rests in the sound discretion of the court.[9] The trial court did not err in weighing the equities in this case. The granting of injunctive relief was consistent with the basic principles of justice and equity and was appropriate to protect the interest of Harline.[10]

The judgment of the trial court is affirmed. Costs to Harline.

STEWART, HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., concurs in the result.

**8.** *Id.* at § 29.

**9.** *Shell Oil Co. v. Stiffler,* 87 Utah 176, 182, 48 P.2d 503, 506 (1935).

**10.** *See Penelko, Inc. v. John Price Assoc., Inc.,* 642 P.2d 1229, 1235 (Utah 1982).