**Irwin N. JAEGER, Plaintiff,**

v.

**WESTERN RIVERS FLY FISHER, a Utah corporation; Michael D. Petragollo, and Does I–V, and XYZ Corporations ABC, Defendants.**

No. 93–C–0542–S.

United States District Court,
D. Utah,
Central Division.

June 9, 1994.

Steven D. Crawley, Cynthia B. Neuenschwander, Walstad & Babcock, Salt Lake City, UT, for plaintiff.

George T. Naegle, Richards, Brandt, Miller & Nelson, Paul M. Belnap, Strong & Hanni, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

This matter is before the court on the motion of defendant Western Rivers Fly Fisher (Western) for summary judgment. The court, having reviewed the memoranda submitted by the parties, will rule on the motion without the assistance of oral argument, pursuant to D.Ut. 202(d).

## SUMMARY JUDGMENT STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only when the pleadings, affidavits, depositions, or admissions establish there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law.

The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This party, thus, bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which the party believes demonstrate the absence of a genuine issue of material fact. *See id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Board of Educ. v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982).

In summary judgment proceedings, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Therefore, the central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

## UNDISPUTED FACTS

A review of the record reveals the following summary of undisputed, material facts. Western, operating under license of the U.S. Forest Service, is an "outfitter," a corporation in the business of arranging fishing expeditions on the Green River. Defendant Michael D. Petragallo is licensed by the Forest Service as a guide to conduct fishing expeditions but cannot do so by himself as the Forest Service only licenses outfitters to float patrons down the Green River. Western and several other licensed outfitters contact Petragallo to guide clients on fishing trips. Because the Forest Service licenses only outfitters to sponsor fishing expeditions, every guide must display on the boat and vehicle he uses the insignia of the outfitter sponsoring the particular trip. Western has classified the river into different sections for purposes of such fishing trips and, based upon Forest Service regulations, may suggest to clients areas in which to fish. Petragallo may agree or refuse to take individuals Western refers to him, and Western does not restrict him from guiding expeditions for other outfitters. Western pays Petragallo a certain sum per fishing trip, does not make any deductions from his compensation, supplies him with a 1099 independent contractor tax

form, and the Internal Revenue Service has determined that Western is properly treating him and other river guides it hires as independent contractors, for tax purposes. Petragallo's responsibilities include: transporting patrons to the Green River, using his own boat for fishing trips, providing food and overnight needs for patrons, assisting patrons in fly fishing, and transporting them from the river to their vehicles.

Prior to May 1992, Robert McMaster contacted Western and arranged for a fishing trip for himself and two others. Plaintiff was a member of McMaster's fishing party. McMaster paid Western, which set the price for the trip, and Western planned the itinerary for the McMaster party, rented fishing rods to them, arranged for Petragallo to be their guide, and set a meeting place and time for Petragallo to meet them in Dutch John, Utah. When Petragallo met the McMaster party, he answered affirmatively when plaintiff asked him if he worked for Western. Petragallo provided his own vehicle and boat and supplied the food, equipment, and gasoline for the trip. Both the vehicle and the boat had signs bearing Western's identification and logo. While driving the McMaster party back to Dutch John at the conclusion of the fishing trip, Petragallo lost control of his vehicle when he swerved to miss a deer in the road, injuring plaintiff.

Plaintiff brought suit against Western, Petragallo, and others. Western now moves for summary judgment, arguing that, because Petragallo is an independent contractor and was never its employee, it is not liable, as a matter of law, for Petragallo's acts in causing plaintiff's injuries.

## ANALYSIS

■ Plaintiff seeks to hold Western liable for his injuries under several theories. Western claims Petragallo is an independent contractor and none of plaintiff's theories establish a relationship between Western and Petragallo such that Western may be liable to plaintiff. Employment status is a question of law, appropriate for summary judgment, when all facts point to a single conclusion only. *See Truck Ins. Exch. v. Yardley,* 556 P.2d 494, 495 (Utah 1976). In ascertaining the nature of an individual's employment, the court must focus on "the actual status between the parties." *Adele's Housekeeping, Inc. v. Department of Employment Sec.,* 757 P.2d 480, 483 (Utah App.1988). The court must, thus, examine the relationship between Western and Petragallo in the context of these theories.

### A. *Agency*

Plaintiff first alleges Petragallo was Western's agent and/or "Western was acting as an agent for Petragallo as an undisclosed principal." Complaint, ¶¶ 5.a. and b. Because Western cannot be both an agent and an undisclosed principal at the same time, the court assumes plaintiff seeks to hold Western liable for Petragallo's conduct by alleging: (1) Petragallo was an agent for Western, and (2) Western was an undisclosed principal.

■ An agent is " 'a person authorized by another to act on his behalf and under his control.' " *Vina v. Jefferson Ins. Co. of New York,* 761 P.2d 581, 585 (Utah App.1988) (quoting *Western Elec. Co. v. New Mexico Bureau of Revenue,* 90 N.M. 164, 561 P.2d 26, 29 (App.1976)). Whether an agency relationship exists "is determined from all the facts and circumstances in the case." *Id.* A principal is not responsible for an agent's acts "unless the agent is acting pursuant to either actual or apparent authority." *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1094 (Utah 1988). As there is no claim that Petragallo possessed actual authority, at issue in the present case is whether Petragallo was Western's agent through possessing "apparent authority."

■ Apparent authority is not "apparent" simply " 'because it looks so to the person with whom [the] agent deals.' " *Id.* at 1095 (quoting *City Elec. v. Dean Evans Chrysler–Plymouth,* 672 P.2d 89, 90 (Utah 1983)). Rather, " '[i]t is the principal who must cause third parties to believe that the agent is clothed with apparent authority.' " *Id.* (quoting *City Elec.,* 672 P.2d at 90). Apparent authority is " 'conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person

purporting to act for him.'" *Luddington v. Bodenvest Ltd.*, 855 P.2d 204, 209 (Utah 1993) (quoting Restatement (Second) of Agency § 27 (1957)). The Utah Supreme Court has set forth three elements that must be established to show apparent authority:

> (1) that the principal has manifested his [or her] consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person *knew of the facts* and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, *relying on such appearance of authority, has changed his [or her] position and will be injured or suffer loss* if the act done or transaction executed by the agent does not bind the principal.

*Id.* (quoting Am.Jur.2d *Agency* § 80 (1986)) (emphasis added).

■ Plaintiff argues Petragallo had the appearance of Western's authority because Petragallo told plaintiff he worked for Western, and the vehicle and boat used during the fishing trip bore Western's signs. However, plaintiff has not claimed, and there is no evidence that, he "knew of the facts" concerning Petragallo's relationship with Western. Plaintiff had no part in arranging the trip through Western and admits no mention was made of Petragallo's employment status in any of Western's brochures, conversations, or correspondence. Moreover, there is no evidence plaintiff somehow changed his position in reliance upon Petragallo's "appearance of authority." Furthermore, although he asserts Western had liability insurance, plaintiff has not demonstrated he will be injured or suffer loss if Petragallo's conduct does not bind Western. Plaintiff's suit may still proceed against Petragallo.[1] Because plaintiff, thus, cannot establish two of the required elements, the court concludes plaintiff cannot, as a matter of law, hold Western liable based upon the theory that Petragallo was Western's agent under apparent authority.

■ Petragallo also contends Western is liable for Petragallo's acts because Western was an undisclosed principal. "The fact that an agent acts in his own name without disclosing his principal does not preclude liability on the part of the principal when he is discovered to be such by a third party who has dealt with the agent." *Garland v. Fleischmann*, 831 P.2d 107, 110 (Utah 1992); *see also Powers v. Coffeyville Livestock Sales Co., Inc.*, 665 F.2d 311, 312 (10th Cir.1981) ("[A]n agent is liable as if it were the principal when the agent acts for an undisclosed principal," regardless of "whether the agent holds itself out as principal or only as agent but does not disclose the identity of its principal."). Plaintiff's argument is without merit. Because apparent authority is created by a principal's manifestations to a third party, " 'there can be no apparent authority created by an undisclosed principal.'" *Master Commodities, Inc. v. Texas Cattle Management Co.*, 586 F.2d 1352, 1358 (10th Cir.1978) (quoting Restatement (Second) of Agency § 8, Comment a (1958)). Furthermore, as plaintiff notes, "[t]he testimony given by Mr. McMaster and JAEGER indicate[s] that at all times they thought they were dealing with WESTERN." Plaintiff's Memorandum in Opposition, pages 14–15. Under these circumstances, Western was never "undisclosed."

Accordingly, because the court concludes a fair-minded jury could not find that Petragallo was Western's agent, acting under apparent authority, or Western was an undisclosed principal, the court grants Western's motion for summary judgment on the issue of agency.

### B. *Employee v. Independent Contractor*

Plaintiff next argues Petragallo was Western's employee, and, thus, Western is liable for Petragallo's actions under the doctrine of respondeat superior. *See* Complaint, ¶ 5.c. Western contends Petragallo is an independent contractor for whose conduct Western is not liable. *See, e.g., American Automobile Ins. Co. v. Fidelity and Casualty Co. of New York*, 247 F.2d 185, 187 (10th Cir.1957);

---

1. Western asserts Petragallo has full liability and property damage insurance, and Petragallo's insurance carrier has neither denied coverage nor is defending under reservation of rights.

*Marks v. Lyon County Bd. of County Comm'rs,* 590 F.Supp. 1129, 1131 (D.Kan. 1984) (generally, employer who hires independent contractor is not liable for independent contractor's negligence to third party).

■ The Utah Supreme Court distinguished between an employee and an independent contractor in *Harry L. Young & Sons, Inc. v. Ashton,* 538 P.2d 316 (Utah 1975). In general,

> [a]n employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties. In contrast, an independent contractor is one who is engaged to do some particular project or piece of work, usually for a set total sum, who may do the job in his own way, subject to only minimal restrictions or controls and is responsible only for its satisfactory completion.

*Id.* at 318; *accord Board of Educ. of Alpine Sch. Dist. v. Olsen,* 684 P.2d 49, 52 (Utah 1984); *Western Casualty & Sur. Co. v. Marchant,* 615 P.2d 423, 426 (Utah 1980); *Tasters Ltd., Inc. v. Department of Employment Sec.,* 863 P.2d 12, 19 (Utah App.1993). Factors a court may consider in determining the nature of the relationship include:

> (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and

fire; (3) the method of payment, i.e., whether in wages or fees, as compared to payment for a complete job or project; and (4) the furnishing of the equipment.

*Ashton,* 538 P.2d at 318; *accord English v. Kienke,* 848 P.2d 153, 157 (Utah 1993); *see also Christean v. Industrial Comm'n,* 113 Utah 451, 196 P.2d 502, 505 (1948) (listing factors separating employee from independent contractor). The court has placed varying significance upon the factor of control.[2]

The Utah Supreme Court has identified differences between employment and independent contractor relationships. For example, in *Ashton,* a truck driver was found to be an employee because the truck he operated was registered in a corporate name and had a corporate sign on it, he had to obtain approval from a corporate supervisor before driving a load, he was obligated to haul loads as instructed and check in with a dispatcher at various times en route, he was directed as to how many miles per month the truck should be operated, and he was required to drive five miles per hour under the speed limit. *See Ashton,* 538 P.2d at 318–19. In *Rustler Lodge v. Industrial Comm'n,* 562 P.2d 227 (Utah 1977), a dry wall applicator had employee status because he was "shown what services were to be performed, not allowed to commence work on his first appearance, directed where to stack the dry wall and to use care in protecting the floor, furnished a protective covering and a ladder and paid at an hourly rate." *Id.* at 229.

**2.** *See, e.g., Gourdin By and Through Close v. Sharon's Cultural Educ. Recreational Ass'n,* 845 P.2d 242, 244 (Utah 1992) (Although such factors as "compensation, direction and control, intent, and business context" distinguish employees from independent contractors, "all need not be present to support a finding of employee status," and "no single factor is completely controlling."); *Pinter Constr. Co. v. Frisby,* 678 P.2d 305, 309 (Utah 1984) ("It is not the *actual* exercise of control that determines whether an employer-employee relationship exists; it is the *right* to control that is determinative."); *Foster v. Steed,* 19 Utah 2d 435, 432 P.2d 60, 62 (1967) ("In general, the determinative question has usually been posed as one of 'control', the view being that if the defendant controls, or has the right of control, the manner in which the operations are to be carried out, the defendant is liable as a master, while, if the control extends only to the result to be achieved, the actor is regarded as an

independent contractor, and the defendant is liable under neither respondeat superior nor the workmen's compensation statutes."); *Thiokol Chem. Corp. v. Peterson,* 15 Utah 2d 355, 393 P.2d 391, 394 (1964) ("The most fundamental [factor] relates to the extent of control by the one who hires over the one who performs the service. If the employer's will is represented only by a desired result, the indication is of an independent contractor; whereas, if the employer exercises control over the means of accomplishing the result, this points toward an agent or servant relationship."); *Sutton v. Industrial Comm'n of Utah,* 9 Utah 2d 339, 344 P.2d 538 (1959) ("While the elements of control by the employer and the intent of the parties are the most important ones, none of the factors separately is controlling. It is from consideration of all of them together that determination is to be made whether the relationship is in essence that of employer-employee or of independent contractor.").

In contrast, in *Graham v. R. Thorne Found.*, 675 P.2d 1196 (Utah 1984), the Utah Supreme Court affirmed a ruling by the Industrial Commission that the plaintiff was an independent contractor. The court noted the plaintiff had an oral agreement with the defendant to install roof shingles periodically on homes the defendant was constructing. The plaintiff billed the defendant monthly, and the defendant made no withholding deductions from the plaintiff's compensation. The plaintiff supplied his own tools, used his discretion in establishing his own work schedule, and worked on any house he chose, whether being built by the defendant or others. *See id.* at 1197. Despite the fact that the defendant supplied the plaintiff with shingles and nails and directed the plaintiff in the manner and timing of the installation, the court concluded the defendant did not maintain sufficient supervision or control over the plaintiff for the plaintiff to be considered an employee. *See id.* at 1197–98. Rather, the plaintiff was an independent contractor. *See id.* at 1198. *See also English*, 848 P.2d at 157–58 (plaintiff tenant who repaired landowner's property in lieu of rent was not landowner's employee because landowner did not supervise or control plaintiff's work and tenant primarily used own tools).

In the instant case, the record reveals Western: advertises fishing expeditions, sets the prices, and collects a deposit from patrons; may suggest fishing areas to patrons; may create an itinerary; engages guides such as Petragallo to conduct a particular trip for a set amount without withholding taxes; sets a meeting time and place for Petragallo and patrons; provides signs for Petragallo's vehicle and boat in compliance with Forest Service regulations; and may rent fishing rods and clothing to patrons. Western also holds the license under which Petragallo and other river guides must operate, pursuant to Forest Service requirements.

Once Western sets up a fishing trip and engages Petragallo for a certain sum as a guide, Petragallo: buys food for himself and patrons for the fishing trip, may provide transportation to and from the river, uses his own vehicle and boat, supplies his own fishing equipment, and uses his expertise in floating patrons to fishing areas and assisting them in fly fishing.

The court cannot say these facts, relative to whether Petragallo is Western's employee or an independent contractor, point to a single conclusion only. On the one hand, the facts suggest Petragallo is an independent contractor. Western engages Petragallo to guide particular fishing trips, for a set sum, allowing him to conduct the trips in his own discretion. Petragallo may even choose to refuse to guide patrons Western has referred to him. Western's actions appear to involve setting up the parameters of a fishing trip and place "only minimal restrictions or controls" upon Petragallo. *See Graham*, 675 P.2d at 1197–98. Also, Western and Petragallo seem to operate as if Petragallo were an independent contractor, as Western has the right to hire Petragallo or any other available guide as it sees fit, pays him per trip, expects him to furnish his own equipment, and treats him as an independent contractor for tax purposes. Moreover, although Petragallo must operate under Western's license, as required by the Forest Service, Western does not control through its license the manner in which Petragallo conducts fishing trips. Apparently, once Western sets up a fishing trip and engages Petragallo as a guide, it relies upon and expects Petragallo to use his own discretion in doing everything else to ensure patrons have an enjoyable experience, including using his own expertise, vehicle, boat, and equipment. *See Peterson*, 393 P.2d at 394. Finally, because Forest Service licensing regulations prohibit an individual river guide from conducting tours unless sponsored by an outfitter, it may be argued that, if Petragallo is subject to any control, it is by the Forest Service, not Western.

However, on the other hand, the facts may indicate Petragallo is an employee. It is actually a judgment call as to how much control Western has over Petragallo through its advertising and arranging of fishing expeditions. Although Petragallo may refuse to guide patrons, Western apparently contacts Petragallo only after it has planned the fishing trip, without involving him, and may pro-

vide him with a set itinerary. Also, Forest Service licensing regulations place Western in a position of having the ultimate right to control Petragallo's work as, without solicitations from Western and other outfitters, Petragallo would be prohibited completely from conducting fishing expeditions.

In applying the above factors and standards, the court concludes a determination of the nature of Petragallo's relationship with Western is a factual issue inappropriate for summary judgment. Accordingly, the court denies Western's motion for summary judgment on this issue.

### C.  Joint Venture

■   Plaintiff next contends Western and Petragallo were engaged in a joint venture. See Complaint, ¶ 5.d.  In Harline v. Campbell, 728 P.2d 980 (Utah 1986), the Utah Supreme Court defined a "joint venture" as follows:

> A joint venture is an agreement between two or more persons ordinarily but not necessarily limited to a single transaction for the purpose of making a profit. The requirements for the relationship are not exactly defined, but certain elements are essential: The parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.
>
> While the agreement to share losses need not necessarily be stated in specific terms, the agreement must be such as to permit the court to infer that the parties intend to share losses as well as profits.

Id. at 982 (quoting Bassett v. Baker, 530 P.2d 1, 2 (Utah 1974)); accord First Sec. Bank of Utah v. Gillman, 158 B.R. 498, 508 (D. Utah 1993).  However, a court's decision as to whether a joint venture exists " 'depends primarily upon the facts of a particular case rather than upon adherence to specific formalities.' "  Gillman, 158 B.R. at 508 (quoting Strand v. Cranney, 607 P.2d 295, 296 (Utah 1980)).

■   On the one hand, the facts indicate Petragallo and Western did not create a joint venture. As a guide who must operate under the license of only a few outfitters, Petragallo undoubtedly is interested in Western's profitability; however, Western and Petragallo had no agreement for the purpose of making a profit. Petragallo used his own property in guiding fishing expeditions. He did not combine his money with that of Western to make joint purchases or investments of any kind. See Harline, 728 P.2d at 982–83.  When Western contacts Petragallo to guide patrons, it expects him to use his own equipment, skills, labor, and knowledge in floating patrons down the Green River and instructing them in fly fishing. Moreover, Western and Petragallo share neither a proprietary interest in nor mutual control over each other's businesses. Rather, Western has a fishing expedition business and requests Petragallo's assistance when needed. Western does not control the manner in which Petragallo conducts river tours, and Petragallo does not control the manner in which Western solicits patrons and organizes fishing trips. Finally, because Western pays Petragallo a certain sum per fishing trip, he has neither a right to share in Western's profits nor a duty to share in its losses.

On the other hand, adopting a broader view of the parties' relationship, the facts may also indicate the parties did engage in a joint venture. Western and Petragallo have combined their efforts in the fishing expedition business. Western contributes its money, skills, labor, and knowledge through obtaining a Forest Service license, advertising for clients, and working with clients to advise them about fly fishing, make fishing rods and proper clothing available to them, and perhaps creating an itinerary for fishing trips. In addition to his vehicle, boat, and fishing equipment, Petragallo contributes his skills, labor, and knowledge through floating clients to good fishing areas, instructing them in fly fishing, and providing transportation and overnight needs. Western sets the prices for each fishing trip and pays Petragallo out of the funds received from clients. Part of

Petragallo's funds are applied toward providing food for the fishing party. Both parties, thus, share a "community of interest in the performance of the common purpose," namely a successful fishing experience for clients. Because both parties must work together to be successful, they share a "proprietary interest." Finally, a "mutual right to control" exists in that each party controls separately a different aspect of the fishing expedition, based upon expertise.

The court, thus, concludes that, like the previous issue, the existence of a joint venture remains a question of fact. Therefore, the court denies Western's motion for summary judgment on this issue.

### CONCLUSION

Accordingly, the court grants Western's motion for summary judgment on the issue of agency and denies the motion on the issues of whether Petragallo is an employee or independent contractor and whether the parties engaged in a joint venture.

It is so ordered.