**In the Matter of KMMCO, INC., a Michigan Corporation, Debtor.**

**Bankruptcy No. 83–0036–W.**
**Civ. A. No. 83–6219.**

United States District Court,
E.D. Michigan, S.D.

May 14, 1984.

Nelson S. Chase, Bloomfield Hills, Mich., for appellant.

Thomas B. Radom, Joseph S. Radom, Southfield, Mich., for appellee.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an appeal from a ruling by the bankruptcy court, holding that a certain contract entered into between the debtor in a Chapter 11 proceeding, KMMCO, Inc., and appellant Irene Bajer, was executory in nature, and the debtor therefore had authority under 11 U.S.C. § 365 to reject the contract. For the reasons stated herein, the decision of the bankruptcy court is reversed, and the case is remanded for further proceedings consistent with this ruling.

FACTS

John Gibson, the former President and Chairman of the Board of KMMCO, Inc., obtained as part of his compensation cer-

tain death benefits from the company. He named as beneficiary of these benefits appellant, his wife at that time, Irene Bajer. The employment agreement between Gibson and KMMCO recited that:

> [in] the event of the death of the Employee (Gibson) during employment the Company shall pay to the Employee's designated beneficiary the sum of Twenty Thousand Dollars ($20,000) per year for a period not to exceed ten (10) years. Said payment shall terminate on the death of the designated beneficiary, her marriage, cohabitation with a member of the opposite sex or ten (10) years from the date of the Employee's death, whichever event shall first occur.

Subsequent to Gibson's death, a dispute arose between Mrs. Bajer and KMMCO concerning payment of the death benefits. The dispute was resolved by way of a settlement agreement and mutual release, entered into between Mrs. Bajer and KMMCO in April of 1979. The terms of the settlement agreement were essentially identical with those of the original employment agreement between KMMCO and Gibson with respect to the terms of payment. Mrs. Bajer would receive an initial payment of $20,000 upon execution of the settlement agreement, followed by no more than 18 semi-annual payments of $10,000 each. Payments would cease upon the death, remarriage, or cohabitation of Mrs. Bajer with a man.

On January 5, 1983, KMMCO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was simultaneously appointed Debtor-in-Possession. Thereafter, KMMCO petitioned the Bankruptcy Court for authority to reject the settlement agreement with Mrs. Bajer under 11 U.S.C. § 365.[1] Mrs. Bajer opposed the rejection. The bankruptcy court ruled

in favor of KMMCO and granted authorization to reject the agreement.

## DISCUSSION

The issue on this appeal is whether the settlement agreement between KMMCO and Mrs. Bajer constituted an "executory contract" as that term is used in § 365 of the Bankruptcy Code, or if instead it is an executed contract as far as Mrs. Bajer's obligations are concerned. If the contract was executory, it could be rejected with permission of the bankruptcy court, and KMMCO's obligations under the contract would be discharged. On the other hand, if it was already executed, rejection would not be permitted.

KMMCO argues in support of the ruling of the bankruptcy court that the settlement agreement imposed mutual obligations upon Mrs. Bajer and KMMCO which were as yet unperformed at the time that KMMCO petitioned for rejection of the contract. No one disputes that KMMCO had an ongoing obligation to make semi-annual payments to Mrs. Bajer. KMMCO argues that Mrs. Bajer had a reciprocal obligation, not fully performed at the time that petition to reject was made, to refrain from dying, remarrying, or cohabiting with a man, and that at least with respect to these latter two obligations, these matters were exclusively within the control of Mrs. Bajer.

*In re Jolly*, 574 F.2d 349 (6th Cir.1978) addressed the meaning of the term "executory contract"[2] in § 365 of the bankruptcy code. The court stated:

> Executory contracts involve obligations which continue into the future. They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which in-

---

1. The pertinent provisions of that statute read as follows:
   (a) Except as provided in sections 765 and 766 of this title and subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
   Section 1107 of the Bankruptcy Code gives the debtor in possession in a Chapter 11 proceed-

ing all but certain enumerated rights of the trustee, including the right to reject executory contracts.

2. As the courts have noted, Congress did not provide an express definition of the term "executory contracts" as it is used in § 365 of the Bankruptcy Code, *In re Jolly, supra,* 574 F.2d at 350.

clude an obligation for the debtor to do something in the future.

*Id.* at 351 (citation omitted).

The court took note of, but did not expressly follow the oft-cited definition of executory contracts propounded by Professor Countryman.[3] Professor Countryman's definition makes clear that executory contracts are those in which there are mutual obligations running between *both* parties to the contract which are as yet unperformed. This definition has been adopted by most of the courts that have interpreted the term as used in § 365, *see, e.g. In re Cochise College Park, Inc.*, 703 F.2d 1339, 1348 (9th Cir.1983); *In re Select-A-Car Corp.*, 625 F.2d 290, 292 (9th Cir. 1980); *Jenson v. Continental Financial Corp.*, 591 F.2d 477, 481 (8th Cir.1979).

This Court does not read the decision in *In re Jolly* to depart from this well-settled definition. The case does not support the proposition that when a creditor has fully performed his obligations under the contract, the contract nonetheless remains executory and subject to revocation under § 365 merely because the debtor has failed to perform. Such a rule would empower the debtor in bankruptcy to reject the claims of all creditors who had given full performance on the grounds that performance by the debtor would be onerous, surely not a result contemplated by the statute. Those examples given by the court in *In re Jolly* (leases, employment contracts, agreements to buy or sell in the future) indicate that executory contracts are those in which neither party has fully performed. The focus of that court upon the failure of the debtor to perform is explained by the special facts of that case. The debtor had breached the contract, resulting in an action by the creditor which had been reduced to judgment.[4] In such a case, of course, where the creditor has been made whole for the breach by judgment, and the debtor has lost his rights to specific performance as a result of the breach, there are no mutually persisting obligations, and the contract cannot be executory.

In the case at bar, the Court must construe the terms of the contract to determine if Mrs. Bajer does in fact have a contractual obligation to refrain from death, remarriage, or cohabitation, or if, as she argues on appeal, those events constitute merely conditions subsequent to the creation of KMMCO's contractual duties to make payments.

The Court concludes that the events identified by KMMCO are in fact conditions subsequent and not promises made by Mrs. Bajer in consideration for KMMCO's promise to make payments. The language of the agreement, to the effect that KMMCO shall pay certain sums of money to Mrs. Bajer, which obligation "shall terminate" upon the occurrence of the enumerated events, is language indicative of a condition and not a contractual promise. By comparison, paragraph 1 of the document provides that "Each party acknowledges that Keystone (KMMCO) is obligated to pay MRS. BAJER the sum of Twenty Thousand Dollars per year for a period not to exceed ten years." There is nothing in the language of the contract to indicate that Mrs. Bajer has promised or is in any way obligated to refrain from remarriage, cohabitation, or death.

Rather, Mrs. Bajer has promised merely to endorse each check with the statement that she "continue(s) to meet all of the *conditions* set forth in the Beneficiary Designation under Employment Agree-

---

**3.** Professor Countryman describes executory contracts as:

a contract under which the obligations of both the bankrupt and *the other party to the contract* are so far unperformed that the failure of either to complete performance would constitute material breach excusing the performance of the other (emphasis added).

Countryman, *Executory Contracts in Bankruptcy; Part I*, 57 Minn.L.Rev. 439, 460 (1973).

**4.** Debtor Lawrence Jolly purchased the right to four burial spaces in the Chattanooga Memorial Park, together with perpetual care and maintenance of the spaces in the park. Jolly was to pay for the spaces in installments, but was able to make only two payments prior to defaulting. At the time of the breach, the contract was clearly executory, in that Jolly was obligated to make continuing installment payments, and Chattanooga Memorial Park was obligated to provide "perpetual care and maintenance".

ment," (emphasis added). The consideration given by Mrs. Bajer for the payments to which she is entitled under the settlement agreement is set forth in the second unnumbered paragraph of the settlement agreement as follows:

> Whereas Mrs. Bajer, furnished various services and companionship to the late John Gibson in consideration of his agreement to designate her the beneficiary of certain death benefits payable pursuant to a certain First Amendment to Employment Agreement...

Of course, this provision indicates that the companionship and services rendered by Mrs. Bajer were the consideration she gave for Gibson's promise to designate her as beneficiary, and not the consideration which she gave in return for KMMCO's promise to make payments. Mrs. Bajer was a third party beneficiary to the employment agreement between her husband and KMMCO. Piercing through the formalism of contractual relations however, it is apparent that what Mrs. Bajer promised to relinquish, in return for KMMCO's promise to make payments under the settlement agreement, were her claims against KMMCO as designated beneficiary under the employment agreement. Mrs. Bajer was not a party to the employment agreement between her former husband and KMMCO, and therefore could not have made any binding promises in that contract. Her failure to die, marry or cohabitate were obviously conditions subsequent to KMMCO's contractual obligations to make payments to her under the employment agreement. The settlement agreement entered into between KMMCO and Mrs. Bajer essentially incorporated the terms of the prior agreement, and with respect to the events at issue, the Court concludes that those events were incorporated as conditions, and not as promises on the part of Mrs. Bajer.

Conditions subsequent are of course events, nonfullfillment or which relieve a party to a contract of its duty to perform, *see* 6A Michigan Law and Practice, *Contracts* § 231 (1982). Thus, failure to fullfill a condition cannot amount to breach. Accordingly, if there remain no continuing obligations to be performed by Mrs. Bajer, the contract is not executory with respect to her, and cannot be rejected under authority of 11 U.S.C. § 365. She has promised to release her rights under the employment agreement between her now deceased husband and KMMCO, which obligation she has fully performed.

Therefore, for the reasons stated above, the decision of the bankruptcy court is reversed and the case is remanded for further proceedings consistent with this ruling.

SO ORDERED.