**FIRST SECURITY BANK OF UTAH, N.A., Plaintiff/Appellant,**

v.

**Duane H. GILLMAN, Trustee, Defendant/Appellee.**

**No. 93–C–149W.**

United States District Court, D. Utah, C.D.

Sept. 7, 1993.

Steven H. Gunn, Katie A. Eccles, Ray, Quinney & Nebeker, Salt Lake City, UT, for First Sec. Bank of Utah, N.A.

Duane H. Gillman, Leslie J. Randolph, McDowell & Gillman, P.C., Salt Lake City, UT, for Duane H. Gillman, Trustee.

## MEMORANDUM DECISION AND ORDER

WINDER, Chief Judge.

This matter is before the court on the appeal of First Security Bank of Utah ("First Security") from an order of the United States Bankruptcy Court for the District of Utah denying First Security's Motion for Summary Judgment and granting the Motion for Summary Judgment brought by appellee Duane H. Gillman, Trustee (the "Trustee"). This court held a

hearing on this appeal on June 16, 1993. First Security was represented by Steven H. Gunn, and the Trustee was represented by Duane H. Gillman and Leslie J. Randolph. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law as it relates to the facts of this matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

The facts forming the basis for this appeal are not in dispute. Prior to the filing of the bankruptcy petition in this case, Mama D'Angelo, Inc. ("Mama D'Angelo") brought a civil action against First Security in the Third Judicial District Court of Salt Lake County, Utah, seeking damages for First Security's alleged breach of certain contractual and statutory duties that allowed two principals of Mama D'Angelo, Lybbert and Turpin, to remove funds from Mama D'Angelo's checking account without authorization. Mama D'Angelo and First Security terminated the litigation by entering into a Settlement Agreement dated September 13, 1989 (the "Settlement Agreement"). Pursuant to the terms of the Settlement Agreement, First Security paid Mama D'Angelo $300,000.00 and Mama D'Angelo's suit was dismissed with prejudice.

In addition to requiring the above-mentioned payment and dismissal of the case, the Settlement Agreement provides that Mama D'Angelo and First Security intend to pursue their claims against Lybbert and Turpin and, in the event either party makes a recovery, that the costs of the recovery would be paid out of the recovery and the net balance of the recovery would then be divided with Mama D'Angelo taking 72% and First Security taking 28%. The Settlement Agreement further provides that Mama D'Angelo would "take the lead" in prosecuting "the Lawsuit" against Lybbert and Turpin, but it does not preclude First Security from commencing an action against Lybbert and Turpin and specifically provides that either party to the Settlement Agreement would have the discretion to reach any settlement agreement with either Lybbert or Turpin that the settling party deemed to be acceptable.

On November 6, 1989, Mama D'Angelo filed a petition for relief under chapter 11 of the United States Bankruptcy Code. On May 10, 1990, the case was converted to a chapter 7 case, and the Trustee was appointed. The Trustee then pursued an action against Lybbert and Turpin, recovering $200,000.00 plus an additional sum of $117,184.00 to have been received by November 1, 1992.

On December 6, 1990, First Security commenced this action, seeking 28% of the Trustee's recovery (the "Disputed Funds") from Lybbert and Turpin. The Trustee counterclaimed that it had properly avoided First Security's interest. Shortly thereafter, First Security and the Trustee filed cross motions for summary judgment. First Security based its motion on the assertion that the Settlement Agreement was not an executory contract subject to rejection by the Trustee, that First Security "owns" the Disputed Funds, and that a constructive trust should be imposed on the Disputed Funds in favor of First Security. The Trustee based his motion on the assertion that First Security holds only a general unsecured claim against the estate.

By Memorandum Opinion and Decision dated December 23, 1992, the bankruptcy court denied First Security's motion and granted the Trustee's motion. In its ruling, the bankruptcy court implicitly rejected First Security's "ownership" argument, holding that the Trustee's entire recovery was an asset of the bankruptcy estate. The bankruptcy court further held that the Trustee's actions did not constitute a breach of fiduciary duty requiring imposition of a constructive trust on the disputed proceeds.[1]

---

**1.** The bankruptcy court did not discuss First Security's argument that the Settlement Agreement was not executory and, thus, could not be rejected.

## II. STANDARD OF REVIEW

Because this appeal involves only the bankruptcy court's legal determinations, and not its factual conclusions, this court's review is *de novo*. *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685 (10th Cir.1988); *First Bank of Colo. Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987).

## III. DISCUSSION

■ Initially, First Security attempts to find error in the failure of the bankruptcy court specifically to address its executory contracts argument. Section 365 of the United States Bankruptcy Code ("Bankruptcy Code") provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (1988). From this language, First Security argues that the Settlement Agreement was not an executory contract and, therefore, could not be rejected. As a result, First Security contends, the Trustee is obligated to perform the contract. In support of this argument, First Security cites *In re KMMCO, Inc.*, 40 B.R. 976, 979 (E.D.Mich.1984), and *In re Chicago, R.I. & Pac. R.R.*, 604 F.2d 1002 (7th Cir.1979).

■ The argument that a non-executory contract can be neither assumed nor rejected, leaving it in a type of legal limbo, is untenable and derives from a misunderstanding of the operation of § 365 of the Bankruptcy Code. Whatever the conceptual utility of the "executoriness" requirement of § 365 with respect to the bankruptcy trustee's decision to assume a contract of the debtor's, the requirement has little or no meaning in the absence of such a decision to assume.[2] Whether a contract is "executory" under the prevailing definition and is rejected by the chapter 7 trustee, or is "non-executory" such that it does not fall within the operation of § 365 under the conventional approach, the result is the same: the non-debtor party to the contract holds only a general unsecured claim against the estate.[3] Andrew I, *supra* note

**2.** What has come to be known as the "executoriness" requirement has come under attack of late. Through a series of articles, two bankruptcy scholars, Michael T. Andrew and Jay Lawrence Westbrook, have led the charge. *See* Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U.Colo. L.Rev. 1, (1991); Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection'*, 59 U.Colo.L.Rev. 845 (1988) [hereinafter Andrew I]; Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn. L.Rev. 227 (1989). Professor Westbrook argues persuasively that the "executoriness" requirement imposed on § 365 derives from a widespread misunderstanding of the effects of assumption or rejection under that section and invites courts to abolish the requirement. Westbrook, *supra*, at 333–34. At least one court has done just that. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 708–09 (Bankr. S.D.N.Y.1992). *But see In re Wang Lab., Inc.*, 154 B.R. 389, 391 (Bankr.D.Mass.1993); *In re Child World, Inc.*, 147 B.R. 847, 851 (Bankr. S.D.N.Y.1992). Professor Andrew similarly argues with much force that the current articulation of the executoriness requirement and its use as a threshold requirement to the trustee's decision to reject or assume is a result of a misconception regarding the effect of that decision. Andrew I, *supra*, at 846–51, 889–95. Unlike Professor Westbrook, however, Professor Andrew would retain a modified version of the executoriness requirement as a preliminary test

to the trustee's decision to assume. Andrew I, *supra*, at 890–95. Nonetheless, both commentators agree that in the context of rejection, the executoriness requirement is at best superfluous, and at worst pernicious. Andrew I, *supra*, at 887, 889–95; Westbrook, *supra*, at 282–94.

**3.** In its Memorandum Opinion and Decision, the bankruptcy court ruled that "First Security holds a general unsecured claim and the entire amount recovered by the Trustee, from Lybbert and Turpin, is an asset of the Bankruptcy estate." Mem. Op. & Decision at 5. Notwithstanding that ruling, in its Reply Brief, First Security states: "First Security has not yet asserted a claim based upon administrative priority. *See* 11 U.S.C. § 507(a)(1). If the Court concludes that the disputed funds are property of the estate, First Security reserves the right to file an administrative priority claim based upon the Trustee's post-petition breach of the Agreement." Reply Brief at 11. First Security did not raise this issue with the bankruptcy court. However, even if First Security had presented a claim for administrative expense priority before the bankruptcy court, such a claim would have been without merit.

Pursuant to Bankruptcy Code § 507(a)(1), administrative expenses allowed under § 503(b) are entitled to priority. 11 U.S.C. § 507(a)(1) (1988 & Supp. IV 1992). Bankruptcy Code § 503(b)(1)(A), in turn, provides:

2, at 887; Westbrook, *supra* note 2, at 284–85; *see* Vern Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L.Rev. 439, 451–52 (1973).

■ To the extent the cases cited by First Security stand for the proposition that a "non-executory" contract may not be rejected, they appear to do so in reaction to the mistaken belief that rejection of a contract terminates liability under it. *See In re KMMCO, Inc.*, 40 B.R. at 977; *In re Chicago, R.I. & Pac. R.R.*, 604 F.2d at 1003–04. Rejection, however, does not void the underlying contract, but rather provides the non-debtor party to the contract with a general unsecured claim. 11 U.S.C. § 365(g)(1) (1988); *Landsing Diversified Properties–II v. First Nat'l Bank & Trust of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592, 595 (10th Cir.1990). Furthermore, to the extent the cases may be read to grant administrative priority to the non-debtor contracting party as a result of the "non-executoriness" of the contract, they violate their own logic because administrative priority is accorded only to contracts affirmatively assumed by the trustee and, under the literal reading of § 365 argued for by those courts, only executory contracts may be assumed.

■ First Security's primary argument on appeal, however, is not predicated on the "non-executoriness" of the Settlement Agreement, but on the contention that First Security "owns" the Disputed Funds. Reply Brief at 11. Because it "owns" the Disputed Funds, First Security argues, the bankruptcy court erred in holding that the Trustee's entire recovery against Lybbert and Turpin is property of the estate.

First Security grounds its claim that it "owns" the Disputed Funds in the language of the Settlement Agreement, which, according to First Security, transferred 28% of Mama D'Angelo's claim against Lybbert and Turpin to First Security and 72% of First Security's claim against Lybbert and Turpin to Mama D'Angelo. Reply Brief at 12. For the following reasons, this court rejects that argument and affirms the Memorandum Opinion and Decision of the bankruptcy court.

■ Section 541 of the Bankruptcy Code provides the conceptual starting point for the analysis of First Security's claim.

---

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

*Id.* § 503(b)(1)(A) (1988).

A claim is entitled to administrative expense priority only if two conditions are met. First, the claim must arise out of a transaction between the creditor and the bankrupt's trustee or the debtor-in-possession. *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988); *see also In re Boston & Maine Corp.*, 600 F.2d 307, 312 (1st Cir.1979) (claims are entitled to administrative priority as "post-filing" claims if consideration supporting them was received by trustee, not debtor); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 695 n. 12 (Bankr.S.D.N.Y.1992) (where debtor's obligations stem from prepetition contract, even postpetition breach will be treated as prepetition liability); *In re Baths Int'l Inc.*, 25 B.R. 538, 540 (Bankr.S.D.N.Y.1982) ("To gain priority status, performance must be given to the trustee or the debtor-in-possession, not the pre-petition debtor."), *aff'd,* 31 B.R. 143

(S.D.N.Y.1983); *Trapp v. R–Vec Corp.*, 359 N.W.2d 323, 327–28 (Minn.Ct.App.1984) (where claimant's performance on contract is complete when debtor files petition, claim is treated as general unsecured claim even though debtor continues to benefit from contract and even if claimant's right to collect does not accrue until after debtor files petition). Second, the claim is entitled to administrative expense priority only to the extent the consideration supporting the claimant's right to payment was both supplied to the trustee or debtor-in-possession and necessary to preserve the assets of the estate or beneficial in the operation of the business. *See In re Amarex, Inc.*, 853 F.2d at 1530.

Neither condition is satisfied in the case at hand. The Settlement Agreement was entered into pre-petition between First Security and the debtor. Similarly, the consideration, in the form of a $300,000.00 payment and a contingent promise to pay 72% of any recovery obtained by First Security against Lybbert and Turpin, was supplied pre-petition by First Security to the debtor under the Settlement Agreement. First Security neither incurred expenses nor provided services post-petition in furtherance of the Trustee's collection efforts against Lybbert and Turpin. Therefore, First Security's claim for administrative expense priority fails and the bankruptcy court's ruling is affirmed.

Section 541 includes within the definition of property of the estate, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). The definition is intended to be broad and includes causes of action. S.Rep.No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. Therefore, to the extent not transferred to First Security, Mama D'Angelo's claim, and the resulting recovery, is an asset of the bankruptcy estate.[4]

Where an alleged transfer of ownership is predicated on a written agreement, traditional rules of contract construction apply. In construing a contract, a court seeks to give effect to the intent of the parties. *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987). Inquiry always begins with the language of the instrument and, where that language is clear and unambiguous, interpretation of the contract is a matter of law. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385–86 (Utah 1989); *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1529 (10th Cir.1988). Similarly, the question of whether a contract is ambiguous is itself a matter for the determination of the court. *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991); *In re Amarex, Inc.*, 853 F.2d at 1530.

The language on which First Security bases its argument is contained primarily in paragraph 3 of the Settlement Agreement, which provides:

3. Mama D'Angelo and First Security intend to pursue their claims against Lybbert and Turpin and agree that whatever sums are recovered from Lybbert and/or Turpin, either through settlement, restitution order, judgment, execution of a restitution order or judgment, or otherwise, shall be allocated as follows:

a. If the monies are recovered by Mama D'Angelo, its attorneys' fees and other expenses incurred in recovering the funds shall first be deducted from the gross recovery and retained by Mama D'Angelo. The remaining balance ("net recovery") shall then be distributed 72% to Mama D'Angelo and 28% to First Security.

b. If the monies are recovered by First Security, its attorneys' fees and other expenses incurred in recovering the funds shall first be deducted from the gross recovery and retained by First Security. The remaining balance ("net recovery") shall then be distributed 72% to Mama D'Angelo and 28% to First Security.

Each party shall provide an accounting to the other of all money recovered from Lybbert and Turpin.

Settlement Agreement ¶ 3, attached as ex. "A" to Appellant's Brief.

In the case at hand, the language of the Settlement Agreement is unambiguous. That language recognizes that both Mama D'Angelo and First Security possess independent causes of action against Lybbert and Turpin. The Settlement Agreement does not preclude either party from pursuing its cause of action. Indeed, paragraph 3 recognizes the independent nature of each party's cause of action, reciting that "Mama D'Angelo and First Security intend to pursue *their* claims against Lybbert and Turpin...." Settlement Agreement at 2 (emphasis added).

The Settlement Agreement contains no traditional language of present transfer of ownership. Instead, the Settlement Agreement merely contains a promise by each party that, in the event either party recovers on its cause of action against Lybbert and/or Turpin, the recovering party will distribute a portion of its recovery to the other. Therefore, as a matter of law, the language of the Settlement Agreement is

---

**4.** A cause of action for injury to property is intangible personal property, consisting of a chose in action, which may be transferred, sold, or assigned. *See Moss v. Taylor,* 73 Utah 277, 273 P. 515, 519–20 (1928); *see also United States*

*v. Butt,* 203 F.2d 643, 644 (10th Cir.1953) (cause of action for conversion of personal property assignable under Utah law); *see generally* 6 Am. Jur.2d *Assignments* § 43 (1963); 6A C.J.S. *Assignments* § 39 (1975).

insufficient to manifest an intent to transfer present ownership of 28% of Mama D'Angelo's cause of action to First Security.

■ First Security next contends the bankruptcy court erred in refusing to impose a constructive trust on the Disputed Funds in favor of First Security. Under the facts of the instant case, First Security argues, the imposition of a constructive trust is necessary to prevent the unjust enrichment of the bankruptcy estate and its creditors.

■ If the Disputed Funds were impressed with a constructive trust prior to the date Mama D'Angelo filed its bankruptcy petition, First Security would be entitled to recover those funds from the Trustee. In general, the bankruptcy estate succeeds only to the title and rights in property possessed by the debtor. Bankruptcy Code § 541(d) provides:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d) (1988). Therefore, where the debtor is in possession of property impressed with a valid trust, the estate will generally hold such property subject to that trust. *See D.O.E. v. Seneca Oil Co., (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir.1990); *cf. Beiger v. I.R.S.*, 496 U.S. 53, 58–59, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990) (trust fund tax payments made from debtor's general accounts prepetition are not avoidable as preferences because such payments involved trust property, which would not have been part of estate); *see generally* 4 Michael L. Cook et al., *Collier on Bankruptcy* ¶ 541.13 (Lawrence P. King ed. 1993). This conclusion also is indicated in part by the legislative history of Bankruptcy Code § 541, which provides, in relevant part:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6324.

■ The existence of a constructive trust is determined under state law. *See Drexel Burnham Lambert, Inc. v. Flight Transp. Corp., (In re Flight Transp. Corp. Securities Litig.)*, 730 F.2d 1128, 1136 (8th Cir.1984), *cert. denied sub nom, Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *Toys "R" Us, Inc. v. Esgro, Inc., (In re Esgro, Inc.)*, 645 F.2d 794, 797 (9th Cir. 1981) (decided under Bankruptcy Act); *cf. In re Seneca Oil Co.*, 906 F.2d at 1450 (accepting parties' agreement that state law governs existence of constructive trust). The party seeking imposition of a constructive trust bears the burden of establishing the existence of facts justifying such imposition. *Research–Planning, Inc. v. Segal (In re First Capital Mortg. Loan Corp.)*, 60 B.R. 915, 918 (Bankr.D. Utah 1986), *aff'd*, 99 B.R. 462 (D. Utah 1987), *rev'd*, 872 F.2d 335 (10th Cir.1989), *panel decision vacated, district court aff'd*, 917 F.2d 424 (10th Cir.1990) (en banc).

■ There is some dispute whether a constructive trust arises at the time of the actions upon which the constructive trust is based or whether it arises only at the time it is declared by a court. *In re Seneca Oil Co.*, 906 F.2d at 1453. There is no controlling Utah precedent on this point. *See In*

*re First Capital Mortg. Loan Corp.*, 60 B.R. at 919. Under either theory, however, "the *effective* date of the constructive trust is the date the wrongful act occurred." *In re Seneca Oil Co.*, 906 F.2d at 1453 (emphasis in original).

■ The bankruptcy estate is determined as of the date the bankruptcy petition is filed. 11 U.S.C. § 541(a) (1988). Therefore, where the "effective date" of the constructive trust is subsequent to the date on which the bankruptcy petition is filed, the property that is the subject of the purported constructive trust enters the estate free of any such constructive trust.

In the case at hand, the effective date of the purported constructive trust occurred after the bankruptcy petition was filed. Both of First Security's arguments in support of a constructive trust are based on the failure of the Trustee to deliver the Disputed Funds to First Security under the terms of the Settlement Agreement, conduct which clearly occurred post-petition. Because the conduct upon which First Security bases its argument for a constructive trust did not occur until after the bankruptcy petition was filed, Mama D'Angelo's claim against Lybbert and Turpin entered the estate free of any constructive trust. As with any contract in which the debtor has unfulfilled obligations on the petition date, the Trustee is bound to perform under the terms of the Settlement Agreement only upon the express decision to assume that agreement. The Trustee did not assume the Settlement Agreement. Therefore, First Security holds only a general unsecured claim against the bankruptcy estate.

■ Even if the effective date of the constructive trust had occurred pre-petition, however, imposition of a constructive trust is not justified in the present case. In Utah, a constructive trust is an equitable remedy to prevent unjust enrichment. *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 600 (Utah 1983). The Utah Supreme Court has defined unjust enrichment as follows:

Unjust enrichment occurs whenever a person has and retains money or benefits that in justice and equity belong to another. Thus, in order for a claim based on unjust enrichment to be successful, there must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Berrett v. Stevens,* 690 P.2d 553, 557 (Utah 1984).

First Security finds unjust enrichment in the retention by the bankruptcy estate of the Disputed Funds, which First Security claims it "owns." Because it "owns" the Disputed Funds, First Security argues, the estate and its creditors would be unjustly enriched if First Security were forced simply to share in the estate's pro rata distribution to its general unsecured creditors.

■ The flaw in First Security's argument is that it presupposes First Security's "ownership" of the Disputed Funds: a contention rejected above. Because First Security holds only a general unsecured claim against the estate, it is entitled only to like treatment with the estate's other general creditors.

■ As is evident from the preceding definition, any claim of unjust enrichment must take into account the circumstances in which it is made. *Id.* at 557. One of the primary purposes sought to be furthered by the Bankruptcy Code is equality of distribution among similarly situated creditors. *See, e.g.,* 11 U.S.C. § 726 (1988); *Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990). Whenever a debtor retains a benefit afforded it by a creditor without paying that creditor in full, the estate is arguably "unjustly enriched." Yet this situation is a result of a congressional policy choice incorporated into the Bankruptcy Code, and born of the reality that an insolvent debtor, by definition, is unable to satisfy in full the debts owed to its creditors. In light of this

congressional policy choice and the reality that other similarly situated creditors are also receiving less than full payment of their claims, the estate's retention of the Disputed Funds subject to pro-rata distribution is not "unjust" under the circumstances.

■ First Security next contends that the retention of the Disputed Funds by the bankruptcy estate would be unjust because the Disputed Funds were obtained by the Trustee in breach of certain fiduciary duties arising out of the Settlement Agreement, which First Security claims created a joint venture between First Security and the Trustee to pursue a recovery against Lybbert and Turpin.

■ This argument also fails. The Settlement Agreement is insufficient under Utah law to create a joint venture between First Security and Mama D'Angelo.[5] The Utah Supreme Court has defined a joint venture as "an agreement between two or more persons ordinarily but not necessarily limited to a single transaction for the purpose of making a profit." *Bassett v. Baker*, 530 P.2d 1, 2 (Utah 1974). The court set forth the following requirements for a joint venture:

> The requirements for the relationship are not exactly defined, but certain elements are essential: The parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

*Id.* The determination of whether a joint venture exists, however, "depends primarily upon the facts of a particular case rather than upon adherence to specific formalities." *Strand v. Cranney*, 607 P.2d 295, 296 (Utah 1980) (citing *Holtz v. United Plumbing & Heating Co.*, 49 Cal.2d 501, 319 P.2d 617 (1957)); *see also Score v. Wilson*, 611 P.2d 367, 369 (Utah 1980).

For the following reasons, the court finds the parties did not enter into a joint venture. First, neither the Settlement Agreement nor the parties' actions are sufficient to evidence the parties' intent to combine their "property, money, effects, skill, labor and knowledge" in the pursuit of a mutual enterprise. As explained above, and as acknowledged by the parties at the hearing on this matter, the Settlement Agreement recognizes that both First Security and Mama D'Angelo possess independent causes of action against Lybbert and Turpin. The Settlement Agreement does not combine the parties' causes of action, and it does not transfer an ownership interest in either party's independent cause of action to the other. Similarly, the Settlement Agreement does not require either party to fund or to participate in the prosecution of the other party's cause of action, but merely to "cooperate" with the other party. The term "cooperation" is defined in the Settlement Agreement as including such things as "affording reasonable access to documents, exhibits, witnesses and other non-privileged information, and coordination of efforts in legal proceedings, settlement discussions, and investigations." Settlement Agreement at 4–5, ¶ 5. Furthermore, First Security did not in fact directly participate in or contribute to the

---

5. The bankruptcy court did not decide whether the Settlement Agreement created a joint venture, but rather decided that the trustee's actions did not constitute a breach of fiduciary duties under Utah law. The bankruptcy court concluded from its reading of *Lynch v. MacDonald*, 12 Utah 2d 427, 367 P.2d 464, 468 (1962), that "[t]he clear import is that the Utah Supreme Court considers a breach of fiduciary responsibility, if not arising from standard fraudulent activity, as primarily a failure to openly and adequately communicate with those owed a fi-

duciary duty." Mem. Op. & Decision at 3–4. Because the Trustee's actions had been open and notorious, the bankruptcy court ruled that those actions did not constitute a breach of any fiduciary duty. *Id.* at 4.

Because of this court's ruling that a joint venture did not exist in the case at hand, it is unnecessary to determine whether conduct constituting a breach of fiduciary duty under Utah law is limited to the instances described by the bankruptcy court.

Trustee's prosecution of the bankruptcy estate's civil action against Lybbert and Turpin. The requisite combination is thus lacking in the present case. For the same reasons, the requisite community of interest and joint proprietary interest in the prosecution of the independent causes of action are lacking.

Second, the Settlement Agreement does not give either party the right to control the other party's prosecution of its action against Lybbert and Turpin. While the Settlement Agreement provides that each party agrees to "notify" the other party of settlement discussions and to "consult" with the other party before entering into any agreement with Lybbert and/or Turpin, *id.* at 3, ¶ 4, the Settlement Agreement also provides that "[e]ach party shall have the discretion to reach any settlement agreement with either Lybbert or Turpin regarding payment or restitution of monies that it deems, in its judgment, to be acceptable." *Id.* The Settlement Agreement does not give either party the power to require the other party to prosecute its independent cause of action, to preclude such prosecution, or to dictate strategy or settlement terms.

Third, neither party has a duty under the Settlement Agreement to share in any losses that may result from an unsuccessful prosecution by the other party of its cause of action. Although the Settlement Agreement provides that the costs of recovery will be paid out of any amount recovered against Lybbert and Turpin before the amount due the non-recovering party is calculated, *id.* at 2–3, ¶ 3, the Settlement Agreement does not require the non-prosecuting party to share in the costs of any unsuccessful prosecution. At worst, the non-prosecuting party's distribution would be diminished or extinguished by the costs of prosecution, but there is no duty under the Settlement Agreement for the non-prosecuting party to share in any losses incurred by the prosecuting party.

In short, under the undisputed facts of the present case, the court finds the requisite elements of a joint venture are lacking. Because First Security has not alleged any other basis for a fiduciary relationship between First Security and the Trustee, there is no basis for the imposition of a constructive trust based on the breach of a fiduciary duty.

Finally, First Security argues that it is entitled to specific performance of the Settlement Agreement. This issue is raised for the first time on appeal, and, therefore, is not considered by this court. *Merrill v. Abbott (In re Indep. Clearing House Co.),* 77 B.R. 843, 876–77 (D. Utah 1987); *Merrill v. Allen (In re Universal Clearing House Co.),* 60 B.R. 985, 993–94 (D. Utah 1986); *see also Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1459 (10th Cir. 1985) ("We limit our discussion to the points raised before the bankruptcy court.").

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the bankruptcy court's Memorandum Opinion and Decision dated December 23, 1992 is affirmed.