**In re STEWART FOODS, INC., formerly known as Stewart Sandwiches, Incorporated, Debtor.**

**STEWART FOODS, INC., formerly known as Stewart Sandwiches, Incorporated, Plaintiff–Appellant,**

v.

**Theodore J. BROECKER, Defendant–Appellee,**

and

**United States Trustee, Party in Interest.**

No. 94–1100.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1995.

Decided Aug. 24, 1995.

**ARGUED:** James Robert Sheeran, Marcus, Santoro & Kozak, Portsmouth, VA, for appellant. James Thomas Lloyd, Jr., Clark & Stant, P.C., Virginia Beach, VA, for appellee. **ON BRIEF:** Carolyn Louise Camardo, Marcus, Santoro & Kozak, Portsmouth, VA, for appellant.

Before RUSSELL, NIEMEYER, and MICHAEL, Circuit Judges.

Reversed and remanded by published opinion. Judge RUSSELL wrote the opinion, in which Judge NIEMEYER and Judge MICHAEL joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

This case requires this Court to decide a discrete issue of bankruptcy law: whether a debtor's obligation to pay money under a nonexecutory contract remains a continuing obligation on the debtor after the bankruptcy filing, or simply gives the creditor a claim against the bankrupt estate. The bankruptcy court and district court both concluded that the debtor's obligation under a nonexecutory contract remained a continuing obligation on the debtor. We reverse and remand, holding that the debtor's obligation under a non-executory contract created a claim to be handled as part of the bankruptcy proceedings.

### I.

Stewart Foods, Inc., the Appellant, filed for bankruptcy on December 31, 1992. Long before Stewart Foods' financial troubles began, Theodore J. Broecker, the founder, former owner, and former president of Stewart Foods, made plans for his retirement. On December 22, 1988, Stewart Foods and Broecker entered into a retirement agreement, entitled the "Stewart Sandwiches, Inc. Salary Continuation Retirement Plan for Theodore J. Broecker" (the "Agreement"). The Agreement provided that Broecker would remain employed with Stewart Foods until he reached the age of 65 and, upon retirement, would receive income for the next ten years.

Broecker retired on May 31, 1991. About a month before his retirement, on April 29, 1991, Stewart Foods and Broecker modified their Agreement. Under the amended Agreement, the parties set Broecker's retirement date and agreed that Stewart Foods would pay Broecker $7,104 per month for 120 months, commencing June 1, 1991.[1] Stewart Foods made the first 19 payments to Broecker between June 1, 1991 and December 31, 1992. Stewart Foods made no further pay-

ments to Broecker after it filed for bankruptcy on December 31, 1992.

Stewart Foods filed for bankruptcy under Chapter 11 of the Bankruptcy Code. On March 4, 1993, Broecker filed Proof of Claim No. 552, asserting a claim against Stewart Foods in the amount of $717,504 for the remaining 101 monthly payments.

On May 12, 1993, Stewart Foods filed a Motion for Authority to Reject Broecker Contract. Stewart Foods sought to reject the Agreement as an executory contract under 11 U.S.C. § 365(a). If the bankruptcy court determined that the Agreement was not executory, Stewart Foods alternatively sought a determination that the Agreement gave Broecker a pre-petition claim against Stewart Foods. Broecker opposed the motion, asserting that the Agreement was not executory and that he had no claim against Stewart Foods.

During the proceedings in the bankruptcy court, Stewart Foods stipulated that the Agreement was non-executory. In doing so, Stewart Foods abandoned its attempt to reject the Agreement under 11 U.S.C. § 365(a). Nonetheless, Stewart Foods continued to maintain that the Agreement merely gave Broecker a pre-petition claim against the estate and that Stewart Foods did not have a continuing obligation to fulfill the terms of the Agreement after the bankruptcy filing date.

The bankruptcy court disagreed. On August 17, 1993, the bankruptcy court held that Broecker had no pre-petition claim against Stewart Foods. The court found that the Agreement was not a retirement contract but a salary continuation agreement, and that, as such, the Agreement constituted a continuing and binding contract on Stewart Foods. As a result of the bankruptcy court's decision, Stewart Foods was obligated to continue making monthly payments to Broecker and could not simply treat Broecker as a general unsecured creditor in the bankruptcy proceedings.

---

1. The parties modified the Agreement because Broecker was indebted to Stewart Foods in the amount of $427,000. The original Agreement provided that Broecker would receive between sixty to sixty-five percent of his Final Average

Salary during the ten years after retirement. In modifying the Agreement, Broecker accepted a reduction in the amount of the monthly payment he would have received under the original Agreement to offset his debt to Stewart Foods.

The district court, on January 7, 1994, affirmed the decision of the bankruptcy court on somewhat different reasoning. The district court reasoned that Stewart Foods, in arguing that the Agreement gave Broecker a pre-petition claim against the debtor's estate, was trying to treat the Agreement as an executory contract. The district court noted that § 365 of the Bankruptcy Code allowed debtors to assume or reject an executory contract, but that § 365 does not give debtors the option of assuming or rejecting a non-executory contract. When a debtor rejects an executory contract, the creditor can bring a claim against the bankrupt estate. The district court concluded that Stewart Foods, in arguing that Broecker had a claim, was trying to reject the Agreement under § 365, even though § 365 applied only to executory contracts and the parties agreed that the Agreement was non-executory. The district court held that debtors are generally bound by their non-executory contracts, and concluded that Stewart Foods remained bound by its obligation under the Agreement to make monthly payments to Broecker.

## II.

■ The Bankruptcy Code defines the term "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . .

11 U.S.C. § 101(5). Congress intended to adopt the broadest possible definition of the term "claim," so that a bankruptcy case would deal with all of the debtor's legal obligations. The House and Senate Reports to the Bankruptcy Reform Act of 1978 state the following about the definition of "claim":

By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95–989, 95th Cong., 2d Sess. 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808; *see also Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2153–54, 115 L.Ed.2d 66 (1991) ("Congress intended by [the language of 11 U.S.C. § 101(5) ] to adopt the broadest available definition of 'claim.' "); *Grady v. A.H. Robins Co.,* 839 F.2d 198, 200 (4th Cir.1988).

When Stewart Foods filed for bankruptcy on December 31, 1992, the Agreement gave Broecker a right to 101 future monthly payments of $7,104. Therefore, Broecker obtained a claim against Stewart Foods when it filed for bankruptcy. Broecker's claim is not defeated simply because his right to the individual payments had not yet become due as of the date of the bankruptcy filing. The definition of "claim" in 11 U.S.C. § 101(5) specifically provides that an unmatured right to payment is a claim. We need no further analysis to conclude that Broecker has a claim against Stewart Foods for 101 payments of $7,104.

■ The district court reached the wrong conclusion because it improperly relied on § 365 of the Bankruptcy Code, which allows a debtor-in-possession to reject or assume executory contracts. 11 U.S.C. § 365(a). The rejection or assumption of a contract does not determine whether a claim exists, but whether any claim that does exist is treated as a pre-petition obligation of the debtor or as an administrative expense entitled to highest priority. *See Leasing Serv. Corp. v. First Tenn. Bank Nat'l Assoc.,* 826 F.2d 434, 437 (6th Cir.1987). The rejection of an executory contract constitutes a breach of the contract, and a party's damages resulting from that rejection are treated as a pre-petition claim and receive the priority provided to general unsecured creditors. *See* 11 U.S.C. §§ 365(g)(1), 502(g); *National Labor*

*Relations Bd. v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). Where the debtor-in-possession assumes an executory contract, the expenses and liabilities incurred may be treated as administrative expenses and receive the highest priority on the debtor's estate. *See* 11 U.S.C. § 503(b)(1)(A); *Bildisco,* 465 U.S. at 531–32, 104 S.Ct. at 1199.[2] Because § 365 applies only to executory contracts, a debtor-in-possession does not have the option of rejecting or assuming non-executory contracts and remains bound by the debtor's obligations under those contracts after the bankruptcy filing. *See, e.g., Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1153 (3d Cir.1989) (holding that a trustee is bound by an arbitration agreement contained in the debtor's non-executory contract). Nonetheless, regardless of the nature of the contract, if at the time of the bankruptcy filing the debtor has an obligation under the contract to pay money to the non-debtor party, that obligation is handled as a pre-petition claim in the bankruptcy proceedings.

The district court's reasoning was logically flawed. The district court noted that, under §§ 365 and 502(g), the rejection of an executory contract creates a general unsecured claim. From this premise, the district court erroneously inferred that the existence of a general unsecured claim must imply the rejection of an executory contract.[3] The district court thus reasoned that Stewart Foods, in asserting that Broecker had a general unsecured claim against the debtor's estate,

was trying to reject the Agreement. Because Stewart Foods could not reject a non-executory contract, the district court concluded that Broecker did not have a claim, and that Stewart Foods had a continuing obligation to make payments under the Agreement.

■ This conclusion, however, violates the district court's own logic. Where a debtor-in-possession assumes an executory contract, he remains bound by the terms of that contract after the bankruptcy filing. Thus, under the district court's flawed logic, a debtor-in-possession who remains obligated under a contract after the bankruptcy filing must have assumed that contract. Because Stewart Foods could not assume a non-executory contract, it follows that Stewart Foods could not remain obligated by the terms of the Agreement after the bankruptcy filing. Strangely enough, the same flawed reasoning that led the district court to conclude that Stewart Foods had a continuing obligation to make payments to Broecker should also have led it to the opposite conclusion that Stewart Foods could not have had a continuing obligation to make such payments. *Cf. First Sec. Bank of Utah, N.A. v. Gillman,* 158 B.R. 498, 503–04 (D.Utah.1993).

■ Besides being logically invalid, the district court's conclusion that Broecker had no claim against the debtor's estate would have pernicious consequences. Under the district court's holding, a debtor's debts arising out of any non-executory contracts, even promissory notes, could not be handled as

2. For a claim to qualify as an administrative expense, (1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986); *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 173 B.R. 296, 298–99 (S.D.N.Y.1994). When a debtor-in-possession assumes an executory contract, the contract becomes a post-petition arrangement between the debtor-in-possession and the non-debtor party. However, any claim arising out of an assumed contract constitutes an administrative expense only if, and to the extent that, the contract conferred an actual benefit to the estate.

3. This type of inference is an example of affirming the consequent, a classic form of invalid reasoning. Consider the following syllogism:

(1) If A is true, then B is true.
(2) B is true.
(3) Therefore, A is also true.

The conclusion that A is true does not logically follow from the premises. The district court's reasoning roughly reduces to the following syllogism:

(1) If a debtor rejects a contract, then a general unsecured claim exists.
(2) A general unsecured claim exists.
(3) Therefore, the debtor must have rejected a contract.

The district court's conclusion does not follow from its premises.

claims in the bankruptcy proceedings. Instead, the debtor would have a continuing obligation to pay those debts. Such a result would seriously constrain a debtor's ability to resolve his financial affairs through bankruptcy. We avoid this result by holding that a debtor's obligation to pay money under a contract, whether executory or non-executory, creates a claim against the debtor's estate that should be handled within the bankruptcy.

■ The bankruptcy court reached the wrong result because it could not overcome its impression that the Agreement was executory, even after the parties stipulated that it was non-executory. Joint Appendix ("J.A.") 44, 51. The parties' stipulation accurately represented the nature of the contract. At the time of the bankruptcy filing, Broecker had already retired and owed no further employment responsibilities to Stewart Foods. The only remaining obligation under the Agreement was for Stewart Foods to make 101 monthly payments to Broecker. However, the bankruptcy court viewed the Agreement as a "salary continuation and employment document," not as a retirement document. The bankruptcy court believed that Stewart Foods was making payments to Broecker for work performed, J.A. 52, and that the Agreement was therefore executory. Although the bankruptcy court believed that the debtor took an "unusual, if not weird, position" by stipulating that the Agreement was non-executory, it accepted the parties' stipulation and Stewart Foods' abandonment of its attempt to reject the Agreement.

■ The bankruptcy court, nevertheless, held that the Agreement, as a salary continuation agreement instead of a retirement contract, did not create a pre-petition claim but remained a continuing and binding contract on the debtor. The bankruptcy court found that none of the 101 payments owed to Broecker constituted a pre-petition obligation of Stewart Foods. However, the fact that the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations. *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management, Inc.)*, 4 F.3d 1329, 1335 n. 7 (5th Cir.1993) ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition."); *United States through Agricultural Stabilization & Conservation Serv. v. Gerth*, 991 F.2d 1428, 1433 (8th Cir.1993) ("[D]ependency on a postpetition event does not prevent a debt from arising prepetition."); *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir.1987) ("The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated or unmatured when the debtor's petition is filed."). Moreover, to the extent that the bankruptcy court reasoned that there was no pre-petition claim because Stewart Foods continued to receive the benefit of Broecker's employment services, the bankruptcy court's reasoning is inconsistent with the parties' stipulation that the Agreement was non-executory, a stipulation that the bankruptcy court purported to accept.

### III.

We conclude that the Agreement, a nonexecutory contract, gave Broecker a right to 101 payments from Stewart Foods. Under the definition in § 101(5) of the Bankruptcy Code, we find that Broecker had a claim against the debtor's estate. We conclude that the bankruptcy court and district court erred in finding that Stewart Foods had a continuing obligation to make payments to Broecker after the bankruptcy filing. We therefore reverse the decision of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*